No. 28,053.

GEORGE A. FORRESTER, *Appellant* and *Cross Appellee*, v. T. C. JOHNSON, *Appellee* and *Cross Appellant*.

(268 Pac. 809.)

Opinion filed July 7, 1928.

*J. T. Rogers* and *George McGill*, both of Wichita, for the appellant.

*R. R. Vermilion, Earle W. Evans, Joseph G. Carey* and *W. F. Lilleston*, all of Wichita, for the appellee and cross appellant.

The opinion of the court was delivered by

DAWSON, J.:   This was an action by an employee against his employer for compensation for special services.   He was defeated and appeals.

Plaintiff was a petroleum geologist.   Defendant was an investor in and developer of oil lands.   Defendant hired plaintiff to go about the country and locate likely oil-producing territory. .For this service he received a salary of $250 per month, later raised to $350 per month, plus his expenses.   According to plaintiff, he was also to receive as additional and special compensation one-sixteenth of the net profits derived from any and all oil and gas leases purchased by defendant on plaintiff's selection and recommendation.   He alleged that in the course of his employment he made a geological survey of certain lands in Russell county and recommended the purchase of a lease on a certain forty-acre tract (SE¼, NW¼, sec. 5, town. 12 south, range 15 west of the 6th P. M.) known as the Kollman lease,

and pursuant thereto defendant did purchase that lease and develop it, with the result that four producing oil wells were found thereon, which at the time this action was begun had paid all expenses and had netted a profit of $70,000, and that by the terms of his contract of employment plaintiff was entitled to one-sixteenth thereof, to wit, $4,375, for which sum he prayed judgment.

Defendant's answer denied the most material allegations of plaintiff's petition, and alleged that he sent plaintiff to Russell county with explicit instructions to purchase leases thereabout, and that the lease on this particular forty acres was acquired in obedience to the orders of defendant, and not in consequence of its selection or recommendation by plaintiff.

The cause was tried before a jury which made three special findings of fact and rendered a general verdict in favor of defendant. The special findings read:

"1. Was it a part of the contract of employment made between George A. Forrester and T. C. Johnson, that Johnson agreed to pay Forrester a sum equal to one-sixteenth of the net profits derived from any oil and gas lease designated and selected by Forrester and accepted and purchased by Johnson? A. Yes.

"2. If you answer the preceding question 'yes,' then did the plaintiff Forrester make a geological survey of the Fairport structure, and as a result of information gained from such survey, select and designate a lease on the southwest quarter of the northwest quarter of section five, township twelve south of range fifteen west of the 6th P. M. in Russell county, Kansas, known as the Kollman lease, as a lease which would be valuable for oil and gas deposits, and so advise the defendant, T. C. Johnson, and as a result of such advice, did Johnson purchase that lease? A. No.

"3. If you answer question No. 1 'yes,' then did the defendant Johnson, independent of any advice from Mr. Forrester, instruct Forrester to select a lease on the top of the Fairport main structure. A. No."

Judgment was entered for defendant and plaintiff appeals.

■ The first complaint pertains to the exclusion of evidence of witnesses to corroborate plaintiff's own testimony showing that he made a geological survey of the Russell county oil field. That fact was not important, and, indeed, not controverted. That was the kind of work plaintiff was hired and paid for—to go about the country, including Russell county, looking for geological indications of oil-producing territory which it might be advisable for his employer to purchase. The issue was not whether plaintiff had made a survey of the Russell county oil field, but whether defendant had bought the Kollman lease in that field on the advice and recommen-

472

dation of plaintiff. This, according to the jury's finding No. 2, defendant did not do, and certainly there was no want of explicit and competent testimony to support that finding. Defendant testified that the Russell county oil field began to interest oil men in 1923, and that he talked with various parties who were interested, like himself, in its possibilities long before he sent plaintiff there to get some leases in that field; and when plaintiff did visit that field he did not make any selections or recommendations, and only after defendant's insistence and peremptory instructions to buy while buying was possible did plaintiff take steps to obtain the Kollman lease and one or two others. If this testimony was true, and the jury so decided, it was perfectly clear that the Kollman lease which turned out to be so profitable was not purchased on plaintiff's advice and recommendation.

■ A minor incident is called to our attention: After the jury had deliberated for some time they were brought into court for further instructions. The foreman of the jury asked, "What constitutes a geological survey?" The court remarked that the term had not been precisely defined by any witness, and that the jury should make their own definition from the testimony in the case. This point is not important. Plaintiff testified at length touching his examination of the Russell county oil field as a professional geologist, and that was all the jury needed to know about a geological survey so far as concerned this lawsuit. Indeed, since plaintiff was hired as a geologist and his professional qualifications were not disputed, and his visit to the oil field and his investigation of its possibilities as oil-producing territory were not controverted, we are free to say that vastly too much time was taken up in this trial touching synclines, anticlines, oil terraces, domes, substructures, the Permian, Ordovician and Cretaceous ages of the outcropping rocks in Russell county and elsewhere. It was, of course, a fine exhibition of geological lore on the part of plaintiff and his counsel, but served no purpose in this lawsuit other than its possibility for mystifying the jury. None too soon did the trial court put a stop to it after an extended colloquy with counsel for plaintiff, which need not be here repeated.

■ Plaintiff next contends that judgment should have been entered in his behalf on the special findings. The first of these merely confirms plaintiff's allegations touching the terms of his employment. Finding No. 2 is confirmatory of defendant's position in this lawsuit

that the Kollman lease was bought on defendant's own initiative and not on the advice and recommendation of plaintiff. Finding No. 3 is not necessarily at variance with finding No. 2 nor with the general verdict. Apparently it means that defendant had received plaintiff's advice touching the Kollman lease, but what that advice was the record does not show. Attaching the credence to defendant's testimony which the jury apparently did, we are bound to infer that plaintiff's advice was that defendant should defer buying; that defendant rejected that advice, and instructed plaintiff to get that lease, or some lease or leases in the main field while they were still obtainable.

We note a cross appeal concerning rulings of the court on the sufficiency of plaintiff's petition, but in view of the result just reached the cross appeal will require no consideration.

There is no substantial error in the record, and the judgment is affirmed.